up this morning is 23-1931, Petr v. BMO Harris Bank. Mr. Charnes. Good morning. Morning, may it please the court. My name is Adam Charnes and I represent the bankruptcy trustee in this appeal. The basic question in this case is whether Sun Capital and BMO Bank will get away scot-free with looting the debtor, a firm's way. Sun Capital acquired the debtor and forced it to incur tens of millions of dollars in debt in order to repay a bank loan to BMO that Sun Capital had guaranteed. By saddling the debtor with such massive debt, plus millions of dollars in consulting fees owed to Sun Capital every year, the LBO deprived the debtor of the ability to respond to market conditions and it went bag for millions and millions of dollars. The trustee alleges that the repayment of the loan to BMO constituted a fraudulent transfer. Sun Capital guaranteed that loan and in order to avoid responsibility for the bankruptcy and for the fraudulent transfer, BMO and Sun Capital rely on section 546e of the bankruptcy code and we think that that provision does not apply in these circumstances and have essentially made three different arguments. Mr. Tardis, before you you get into the substance of the three, you spend a lot of time at the opening of your brief relying on our opinion in FTI Consulting and it seems to me that you're reading that too broadly because we specifically found in that opinion that there was no question that the transfer at issue was either a in connection with a securities contract. There was another piece of the statute that we found ambiguous but it was not the one that you're asking us to find ambiguous here. That's completely true. I think what we're relying on is in FTI, this court, and in other decisions as well, this court looked to the purposes that Congress had when it enacted section 546e. But we didn't look to any type of legislative history for the purpose of determining in connection with the securities contract. In fact, quite to the opposite, we said there was no question that it fell within a securities contract. I think that's right and in a couple of the other cases that this court had under 546e also the court found the in connection with was satisfied. Of course, that doesn't mean that it's satisfied in this case and we argue that it's not. But being satisfied is different than being ambiguous. What that does suggest is that it's not the reason the courts in a wide range of cases in different contexts have interpreted in connection with differently. Now you talk about in connection with. I'm talking about securities. Well, I think yes. Because if it were ambiguous, then we would have said it's ambiguous and taken a look to see if the facts in FTI fell within a securities contract and that's not what we said. Right. The argument that we're making, the 546e only applies in the context of securities transactions involving the public settlement. Yes, that's one piece of your argument. Another piece, as I understood it, and please correct me if I'm wrong, is that you can't define securities contract, that that's ambiguous and we can't rely on just the plain definitions that are cross-referenced because we have to look at the legislative history and why they're cross-referenced. Well, I think we do make that argument, but I don't think you have to accept. I think you can find that, for example, we argued the bridge loan, which was established by the loan authorization agreement, is not a securities contract. And I think you can get there, get to our argument, just by looking at the plain language of the definition in section 741, 7a, Romanet. I did not understand you to be defining securities contract. My understanding from your brief was that your focus was on we can't rely on the definitions in this other section at all because that's inconsistent with the purpose of the statute. Well, that's one of our arguments, yes. I did not understand you to be saying that the definitions in that statute itself are ambiguous. Well, I don't, I think... Do you understand what I'm saying? Yeah, I understand what you're saying. I don't think my argument, the argument I'm about to make is an argument that the definition of securities contract is ambiguous with respect to the bridge loan. I think it's an argument that it doesn't apply in these circumstances by its very terms. And that is that, you know, 741, 7a, 5 defines securities contract as, among other things, an extension of credit for the clearance or settlement of securities transactions, securities transactions, plural. So we think what Congress was getting at there was the type of credit instrument that is used in the securities industry. The credit instrument we have here is a bank, it's an ordinary bank loan. It's a revolving credit instrument. It doesn't mention the purchase of securities, doesn't mention the SBA, doesn't mention Wormsway. It's an ordinary bank loan. In fact, it provides by its very terms, and you can look at this at pages 217 to 225 in the loan authorization agreement, says that once it's repaid, the revolving line of credit continues and could be used for something else. So we think it is not, an ordinary bank loan is not the type of credit instrument that Congress felt meant to fall within this definition. To give you a hypothetical, if you, Your Honor, go home tonight and get on whatever website you use to purchase securities and use your credit card to buy securities, while the purchase of the bank, perhaps, if you reject our broadest argument, but that's not the type of credit instrument that Congress meant because credit cards are not ordinarily used, in the words of the statute, for the settlement and clearance of securities transactions. It was used for the clearance of a transaction, but it's not the type of credit instrument that's used in the industry. So we think for that reason, just on the plain textual reading of the definition, the bridge loan is not a securities cut. And if the bridge loan is not a securities contract, if you accept our argument on that, then the guarantee is not a securities contract either because the definition of guarantee, credit enhancement in the statute, it has to be, it has to be guaranteeing a coverage security contract. So if it's not, if the bridge loan is not a securities contract, then the guarantee is not a securities contract. And that just leaves, the district court relied on three documents, three loans, basically, three provisions, three things, the SPA, the bridge loan, and the guarantee. So that leaves the SPA. And if you reject our broadest argument, the SPA would be a securities contract, but we don't think it's, the transfer is in connection with the SPA. The transfer paid off the bridge loan, and the district court's reasoning was, well, the transfer paid off the bridge loan, the bridge loan proceeds were paid and, you know, initially were used to buy the securities. So through that sort of chain, it's in connection with the satisfied. And we just don't think either temporally or substantively that that's right. As I said before, the bridge loan was an ordinary bank loan. It didn't mention the SPA, didn't mention Wurmsway, didn't mention the acquisition of securities. And so I, you know, we do think that the court can take cognizance of the purpose Congress had in enacting 546E in interpreting phrases like in connection with. The Second Circuit recently in the Nine West case that we submitted, completely different legal issue. Would we have to overrule our case in Peterson in order to agree with you? Because in Peterson, the trustee asked us to interpret in connection with, consistent with the view of the legislative history, and we declined to do so. And I think you're asking us to do the same thing. Well, I think Peterson was a much different case. In Peterson, there was a direct correlation. I mean, here we have multiple steps. But if, whether it's different or not, that doesn't impact whether or not the statutory language is ambiguous. And we agreed in Peterson that there was ambiguity in connection with. We just declined in concluding that that provision was met. We declined to look to the legislative history that you're asking us to look to to define that. Respectfully, I think, that's not, I read Peterson slightly differently. In fact, in Peterson, the court said the trustee is not asking us to choose sides in a debate about interpretation so much as to chuck 546E out. So the, so the trustee in that case was making a much different and broader argument and in a situation where the in connection with, basically this court said under any standard, in connection with it is satisfied. But I also want to get to the point that even if you disagree with us on everything I just said, we think that the court should remand to the Bankruptcy Court to allow us to amend the complaint to add a claim under Section 544A. And Section 544... Did you ever ask the Bankruptcy Court for permission to do that? We didn't because we prevailed in the Bankruptcy Court. The Gangster Court denied the motion to dismiss. So there's just no reason to? Well, there was no reason to. Eventually, I mean, eventually, presumably before we got to trial or before it got to summary judgment, we would have amended the complaint to begin. But at that point, there was no immediate reason to do so and BMO and Sun Capital appealed to the District Court. So once the case was in the District Court, we had no opportunity to do so. They say, well, we should have filed a Rule 59 motion, 59E motion, after we lost in the District Court. But Rule 59E is not applicable in the District Court under the Bankruptcy Rules when the District Court is sitting in its appellate capacity. So at that point, we had no choice, we had no opportunity to amend but to take it, take the case to this court. Mr. Charnas, if if you prevail here and the transfer is clawed back, is there any impact on the employee stock ownership? No. Okay. We were not seeking to to avoid the transactions to the, okay, to the Eastside. Do you want to save the rest of your time for rebuttal? Yes. All right. Thank you. Thank you. Mr. Zaffi? Good morning. Good morning, Your Honors, and may it please the Court. My name is Michael Duffy and I am here today on behalf of the appellees BMO Harris and Sun Capital Partners VI. I would like to reframe, if I could, the central question of this case as one of whether this court should rewrite a statute that had the opportunity to revise and rewrite, to include definitions that Congress itself has declined to impose onto that statute. Congress has been clear that there is one exception to the safe harbor included in 546E, and that is in cases of intentional fraud. Congress has had multiple opportunities to revise and include exceptions to the safe harbor, including temporal exceptions, including exceptions for private securities. Congress has been invited by numerous judges to to revise the statute accordingly, and it has declined to do so. Respectfully to this court, on which I clerked many years ago, it is not the provenance of the courts to rewrite statutes. That is Congress's job, and here there is no question, there is no question that the statute before this panel is unambiguous. The transfer at the time was made to a financial institution, the Bank of Montreal, BMO Harris, and there is really no... That's not contested though, right? It is not, but there really is no meaningful contest that it was made in connection with three separate securities contracts. Now my colleague at the bar very ably says they're not securities contracts because they were not implicating the public security system, but when the court looks at the definition of security, there is no definition of security that requires it to include only public securities. There does seem to be some legislative history that supports the trustees argument. Well there's legislative history, respectfully that's the problem of legislative history that this court has highlighted repeatedly. There's legislative history for almost every point, and where the statute itself is unambiguous, this court's jurisprudence makes plain that the court must stop and look only to the language and not engage in preferring certain legislative history or certain statements about a statute's purpose over the text itself. And here, with respect to the three central agreements, the stock purchase agreement, which the bankruptcy court itself conceded was for the sale of securities, if you look at the bridge loan, that loan was effectuated to purchase the stock pursuant to the SPA, and the transfer canceled the bridge loan and the guarantee under any definition of in connection with, which I rightly noted has been construed broadly by this court, all of those contracts were made in connection with the securities agreement. We've said that in connection with here is ambiguous and we have not interpreted it. What should we look to to interpret that? I think in connection with, you look at canons of construction, in connection with, if you look at this court's jurisprudence, I believe in the Peterson case, you construe in connection with as broadly as related to. I don't think we adopted that in Peterson, though. There have been other courts that have said that. In Peterson, given the facts of the case, we didn't have to come up with a precise definition, but if we wanted to define it here, what would we look to? I would look to this court's authority, for example, in the Federal Arbitration Act context, which is broad. Whenever you have in connection with an arbitration agreement, you say broadly that is assumed to be as close to related to. I it is clear that the overwhelming weight of authority is in connection with is a broad construction and you look at these agreements, there is no way under any reasonable construction that these three contracts cannot be seen as in connection with the sale of securities. Just for a moment, taking on the point about whether Congress intended the safe harbor only apply to apply to public securities, I think it is a misstatement of a fact that private securities cannot have wide systemic, the sale of private securities, and agreements to financial institutions related to same, if they were voided, would not have broad systemic impact upon the financial system. The LBO market is large, and I think it would be unwise, and frankly outside of this court's covenants, to substitute its judgment for that of the legislator, legislatures. It is clear that the private LBO market is large, and that unwinding transaction could have systemic effects, which a judicial body is not, with respect again, the appropriate entity to determine. I'd like to just talk briefly about two other points, which is my colleague's statement about there being an opportunity to raise a 544A complaint in the bankruptcy court. It is clear, it is unambiguous, and it is clear from the record that the trustee in this case never pled a cause of action under 544A. That is undisputed. It is also clear that the bankruptcy court, in sustaining their complaint, never referenced 544A in its opinion. Now, if this court, and I know the members of this court all served as trial judges, I believe, if a court is to sustain a complaint, I've never, in my 23 years of appearing before trial courts, had a trial court sustain a complaint on a cause of action that was unpled. Here, that is precisely what the trustee asked this court to conclude, that the bankruptcy court sustained a complaint on a cause of action that was unpled. Why not get the opportunity to plead it? Because leave to amend, as you know, should be freely given, and they did not have an opportunity to plead this 544A. Well, that's correct, but that's a different thing. I mean, they could have intervened with a Rule 59 motion to amend the judgment, even though the judgment was in their favor. They could have repled at that point, and I also think to say that... But would that make sense if it's in their favor that they have a burden to come back in and ask to replead? I don't know if it would make sense. I'm not sure procedurally that's done. I'm not, I don't know if I would do it either, but it certainly doesn't mean that the cause of action was preserved, and it could have been preserved as a cross appeal when the appeal was raised by us to the district court. And what is clear here is, even if this court were to determine that, you know, it's been waived by the trustee, the overwhelming weight of the authority is that it is preempted by federal law and by 546E. To allow state causes of action to be advanced in the face of the 546E preemption bar would create an exception that would swallow the rule, and there would be all sorts of state causes of action that would be used as an end-around around 546E's I would submit to this panel that there is no authority that countenances such a result. There are no circuit courts that have held that correct. I know there are two circuit courts that have held it is preempted, but I didn't see any courts that had held it's not preempted. That's correct, that's correct. There are no circuit courts that have held that it is in fact not preempted. So in summary, we believe that the statute is clear and unambiguous, and while distinguished members of the bar and bench may disagree with it, that is the law. And in this case, this is not even close. We have three contracts that are indisputably related, even by the trustee's own pleading, to a purchase or sale of securities, and that falls squarely within the definition of the safe harbor created by 546E. If there are no questions, we respectfully urge this panel to refer to the judgment. One thing, you know, Mr. Tarnas started his argument with the specter of, quote unquote, what they call in the brief, looting by private equity firms, right, of portfolio holding companies. Here, my understanding is that under the stock purchase agreement, the company agreed to transfer a hundred percent of the shares to the intermediate holding company. Is that correct? That's correct. Okay. So there weren't other, any other shareholders or people that an interest, an ownership interest in the company after the stock purchase agreement, other than the intermediate holding company? That's correct. No, I would assume that the trustee's argument would be that the creditors were prejudiced because the company, the LBO rendered the company ab initio. But this is different than the hypothetical that the trustee raises in their briefs with regard to this person and ABC company, et cetera, et cetera. Absolutely. That's a critical distinction, Your Honor. I'm glad that the court highlighted that there is no scenario here where minority shareholders or other constituents were prejudiced by this transaction. That's correct. Thank you. If the court has no further questions, we rest on our briefs. Okay. Thank you, Mr. Duffy. Mr. Tarnas, your rebuttal, please. Thank you, Your Honor. On the 544A point, I'll make a couple of comments quickly, which is, first of all, it's true the bankruptcy court's opinion does not mention, does not use the word 544A. It refers to 544. But if you notice at the beginning of the opinion, the court had two opinions, a Sun opinion and a BMO opinion, and they're different. The court addressed this, what we think is the 544A argument, only in the Sun opinion. And what the court said was, we don't have to even look at 546E, because in 544A, excuse me, 544 allows you, allows the trustee to sue for the value of the transaction without avoiding it. Well, that only applies to 544A. 544B is only an avoidance power. Let's assume that, and that the bankruptcy court implicitly said you could plead a 544A claim. Why wouldn't it be futile to let you amend it in light of the preemption arguments? Because we disagree that it's preempted, and for the very simple reason is, we would assert a 544A claim only against Sun Capital, as the district court, excuse me, the bankruptcy court alluded by only including this discussion in the Sun Capital opinion. And there's no dispute here. Sun Capital is not an entity that Congress sought to protect in 546E. It is not part of the securities industry, and this court has repeatedly, in discussing 546E, has repeatedly alluded to the fact that statute, that subsection, is meant to protect, as this court put it in FTI Consulting, parties in the securities industry. And in fact, in FTI, this court distinguished... Boy, that is a reach. I mean, to ask a federal court to say that we're going to look not at the language of the statute, but who Congress meant to protect by the statute, and not apply the statute as Congress wrote it, but as certain members of Congress, who they wanted to protect. I completely agree with you if you're interpreting the language of the statute. In fact, with the preemption argument, they're relying on conflict preemption, obstacle preemption. And the question then is, does application of the state law, because these are Indiana statutes the trustee is seeking to enforce, whether use of the state law would frustrate or be an obstacle to Congress's purpose. So under settled conflict obstacle preemption, you have to look and figure out what is Congress's purpose. And Congress's purpose here, as this court has said repeatedly, FTI Consulting in the Grady case, has said the purpose was to prevent these cascading bankruptcies in the securities industry. Trading public securities, the stock and the money changes hands through multiple parties, even in a simple stock purchase. If one of them is avoided and it sends one of those entities into bankruptcy, it could have that cascading effect throughout the... That's what Congress meant to prevent. It's clear that Congress wasn't trying to prevent Sun from going bankrupt. So I think, Your Honor, for the purposes of obstacle preemption, you do have to look at what entities Congress meant to protect. And Congress did not mean to protect Sun Capital. It may have meant to protect BMO, if you reject our broader argument, and that's why we're not seeking to amend to make a 544A claim against BMO. But we are against Sun because, as this court said recently in Grady, Section 546E applies only to the securities sector of the economy. Sun Capital is an investor. It goes in, it buys companies, and it's a private equity firm that buys companies and tries to leverage them to make money for itself. But purchasers of securities are not who Congress meant to protect in 546E. So we think the preemption argument is invalid. We couldn't cross-appeal. As counsel said, we won in the bankruptcy court. The Supreme Court has recently reaffirmed. This court has said, if you win, you can't cross-appeal. You're not going to seek to enlarge the judgment. We weren't seeking to enlarge the judgment. The judgment was motion to dismiss denied. We weren't seeking to enlarge that. And my time is just about up, so rather than cram something in the last 10 seconds, I'll ask if there are any further questions. Thank you very much. Thank you. The court will take the case under advisement.